## No. 84.

## D. R. CARROL *v.* W. H. PETERS.

1. Where a note expresses upon its face that it was given for a valuable consideration, it makes out a *prima facie* case upon this question, despite the denials of the answer.
2. This presumption may be rebutted, and the burden of proof shifted by evidence, casting doubt or suspicion upon the execution of such a note.
3. The impeaching circumstances need not be strong in order to cast the burden of proof upon the holder.
4. The mere fact that a note was given for accommodation does not impose the burden upon the holder of proving his title and *bona fides.*
5. When, by his own assumption or by suspicious circumstances, the burden is upon the holder of commercial paper, he is bound to fully disclose his title and establish it clearly. He must give dates and all particulars connected with his acquisition.
6. In the face of close and searching questions, mere sweeping declarations, that the paper was acquired in good faith, or for a good consideration, or before maturity, are not sufficient.
7. The inability or unwillingness of a holder to furnish specific information upon these matters, is itself a suspicious circumstance.
8. Where a tender of the books of a firm in evidence is made, and objections made and reserved only upon special grounds, which are untenable, the evidence will be considered.
9. The rule is not that a defendant must first impeach the title of plaintiff to the note sued upon, but, on the contrary, that he must first establish his right to raise such a question before he will be heard presenting it.
10. Where a party himself calls for the production of particular books, he will not be heard objecting to them as evidence.
11. Where the accommodation paper is not negotiated until after its maturity, the party lending his name cannot be held responsible therefor.
12. Legal responsibility, depending solely upon implication, can follow only such circumstances as cannot be reasonably explained, except upon the supposition that the party intended to bind himself.

*Appeal from Third District Court. Monroe, Judge.*

*F. R. King* for plaintiff.
*Bayne & Renshaw* for defendant, appellant.

McGLOIN, J.—Defendant is sued upon an accommodation note, given Wallace & Cary, late a commercial firm of this city.

The answer sets up the character of the paper, and expressly attacks plaintiff's title. The case presents questions of law and fact, as follows:

First—Is the fact that the note sued upon was accommodation paper sufficient, of itself, to put the burden of proof as to title upon plaintiff; and if not, what is sufficient to shift the burden of proof?

Second—Did plaintiff acquire the note in question for a valuable consideration, before maturity, and in due course of trade?

Third—Does the taking of accommodation paper, after maturity, affect the right of the holder to recover?

1st. A note which expresses upon its face that it is for value received, certainly makes out a *prima facie* case in favor of its holder, despite express denials in the answer. 8 Martin N. S. 294; 2 La. 455; 4 La. 220; 14 La. 254; 2 R. 25; 4 R. 196; 1 La. An. 326; 3 La. An. 136, 331; 4 La. An. 531; 10 La. An. 683; 15 La. An. 41, 382, 353, 459; 21 La. An. 200, 513; 28 La. An. 94; Daniels on Negotiable Instruments, § 160, 163, 164.

Our authorities are almost uniform in support of the proposition that this presumption may be rebutted and the burden cast upon plaintiff to establish his title by evidence casting a doubt or suspicion upon it. 3 La. An. 304; 9 La. An. 22, 234; 10 La. An. 792; 12 La. An. 373; 14 La. An. 121; 15 La. An. 41, 459, 18 La. 357; 4 R. 196; 9 R. 183.

The circumstances to which this effect has been accorded in some of these authorities were such as to justify the conclusion that, in the jurisprudence of this State, the presumption is not a strong one, and that slight impeaching circumstances will be sufficient to shift the burden. We do not consider this at all unreasonable. Where the real facts are such as would, if disclosed, defeat the recovery of a plaintiff, defendants are entitled to fair treatment and adequate protection from the courts. To allow such a holder to recover, is to perpetrate or sanction a wrong; and no arbitrary rule, which shuts out the light or renders its access difficult is entitled to respect. A holder of negotiable paper, besides holding the affirmative of the issue,

is familiar with the history of his connection therewith and has usually the means wherewith to establish it. Since the law of evidence has been so universally amended as to permit parties in interest to testify, there can be but little difficulty in establishing titles where they are valid and *bona fide.* On the other hand, a party to negotiable paper who has been wronged in connection therewith, usually finds the instrument coming to him through a stranger. Such stranger will not readily furnish information detrimental to himself, nor will the person through whose wrong the injury has been inflicted readily confess his misconduct or aid in its exposure. It will be noted, that because by such slight circumstances a plaintiff is compelled to disclose his title, it does not follow that upon trial they will be held sufficient to defeat his recovery. The two questions are quite distinct.

The interests of commerce already inflict sufficient hardships upon unfortunate parties to commercial paper without imposing upon them the additional one of fully establishing a negative or furnishing complete light upon matters not easily within their reach and entirely familiar and easy of proof to their opponents. Porter *v.* Garrison, 2 Grant's Cases, 297.

We do not, however, consider our authorities as going so far as to explicitly hold that the party to accommodation or other similar paper, who, voluntarily and not through error or fraud, puts paper, without consideration to himself, upon the market, can, by simply proving this fact, impose the burden of proof upon his opponent. In absence of any precedent in our courts having been brought to our notice going explicitly to this extent, we consider the ruling in Mills *v.* Barber, 1 M. & W. 125, as sound in law.

2d. In this case, however, defendant has succeeded in making proof of circumstances which strongly militate against the title of the plaintiff. He shows that this note was delivered to Wallace & Carey about its date, July 18, 1878, and was payable in sixty days ; that upon the books of that firm it was, at its date, properly entered as accommodation paper, being

credited to W. H. Peters' accommodation account; that on November 18, 1878, *nearly sixty days after its maturity*, it was credited back to said account as "not used." It was shown that the note was never presented to Peters until some days after the last entry upon the books of Wallace & Carey, and long after maturity, and then, although endorsed by Wallace & Carey, it had neither been protested nor had protest been waived by the endorsers, yet when suit was brought there was such a waiver thereon. We consider these circumstances as being sufficient to shift the burden of proof, and as imposing the obligation upon plaintiff of clearing his title from the suspicion which rests upon it. He himself recognized their force and attempted to prove consideration and *bona fides*. Having assumed this task, whether necessarily or not, he must be held to its performance in a complete and satisfactory manner.

Wherever, by the circumstances or by his own assumption, the burden of proof is cast upon a holder of commercial paper, he is bound fully to disclose his title and to establish clearly consideration and *bona fides*. In order to comply with this obligation, he should give date and particulars of price and circumstances connected with the taking, at least to such extent as to enable the court or jury to determine for itself the character of his title. Mere sweeping declarations that a valuable consideration was paid, and that it was taken in due course of trade and before maturity, while perhaps sufficient, if the opposite party choses to rest satisfied therewith and neglects to cross-examine, will not suffice, if upon closer cross-examination, the holder or his witnesses refuse, or are unable, to furnish details. If this were all that was required, the holder might be still more vague and general in his proof, and confine himself to the simple statement that his title was good. Indeed, the fact that a holder refuses or is unable to be specific when required so to do, but strengthens the suspicion resting upon his title instead of clearing it as such evidence should do.

In this case, plaintiff says he is unable to give the date at which this note came into his hands or specify the particular

transaction with which it was connected.   He merely declares that it was handed him as collateral to secure him for loans ; but what loan, or whether given before, at the time of, or after the loan, he fails to show, although questioned.   So, also, he cannot state the date of receipt, either exactly or approximately, but satisfies himself, in reply to persistent interrogation, with the broad assertion that he took it before maturity, that he kept no book, account or memorandum showing these facts, nor could his memory supply the information.   As the burden was cast upon him by suspicious circumstances already developed, this inability, whether actual or feigned, but adds weight to the doubt, which it was his duty fully to remove.   When to this is added a similar unwillingness or inability to specify, upon the part of a member of the firm of Wallace & Cary, who delivered this instrument to him, and was produced by plaintiff to establish his title, the suspicion is rendered still more strong.

We shall not enter upon the question of consideration between Wallace & Cary and plaintiff, because, in view of plaintiff's failure, as remarked above, we do not consider that he has established his receipt of the note before maturity.   We still further believe that defendant has, by strong circumstantial evidence, shown that this instrument was in the possession of Wallace & Cary after it fell due.   We have mentioned the entries in the books of that firm.   Plaintiff claims in brief that he excepted to their introduction in evidence upon the ground that they were, as to him, *res inter alios acta*.   Referring to page 31 of the testimony, we find here that plaintiff's counsel urges the same objection as he had already made, as covered by the bill of exceptions taken. This bill and the notes, in the course of the testimony relative thereto, show that the objection reserved was to the right of defendant, before proving that plaintiff had received the note sued upon after maturity, to show that it was accommodation paper.   We find also, that, instead of objecting to these books, plaintiff's counsel himself called for their production, and received a

promise that they should be forthcoming. In addition to this, the entries in question are, we think, substantially verified by the one who kept these books, and under all the circumstances they are entitled to weight as evidence. The real objection of plaintiff is without force, because the rule is not that a defendant must first impeach the title of the plaintiff, and then show his interest in presenting the issue, but the reverse; for he will not be listened to questioning the right of the holder of negotiable paper, unless he shows that he would have a good defense against the instrument if in the hands of the original payee. Whether a defendant, fairly presenting these issues in his pleadings, can be controlled in the order of administering his proof, we are not called upon to determine.

The failure to present and protest, plaintiff declares attributable to his having overlooked the paper, and neglected to deposit it in bank with his other notes. Mr. Cary, witness of plaintiff, from whom he received this note, although stating in general terms that the transfer was made before maturity, yet declares that he thought he had returned this paper to Peters, with others of the same kind, just before the affairs of his firm were placed in the hands of receivers, and was much mortified to find that he had omitted to do so unintentionally, and that, at the time, it was his supposition that this had been done.

Amongst the things shown upon a list of collaterals held by plaintiff against Wallace & Cary, are a large number of open accounts, judgments, stale notes, and policies of life insurance upon the lives of debtors of that firm, and some lands, securities which are not usually given, or exacted by lenders of money, where solvent and unsuspected parties are the borrowers, and it is not improbable that these sweepings, with the note sued upon included, either intentionally or inadvertently, were transferred to plaintiff when the inability of Wallace & Cary to proceed in business was discovered or acknowledged, and after the entry upon the books already mentioned, and consequently after the maturity of this note. At all events, we

consider that not only has plaintiff failed to show that he took this note before maturity, but that defendant has rendered it reasonably certain that the transfer was after the note had fallen due.

3d. There is conflict of authority upon the question whether the taking of accommodation paper, after maturity, defeats the right of a holder to recover. Mr. Daniels, in his work on Negotiable Instruments, § 786, 726, holds the opinion that the time a person receives such paper makes no difference. This opinion is advanced upon the strength of certain English authorities, and he regrets that the American authorities are not uniformly to the same effect. So far as we have had access to them we consider the weight of American authorities as being opposed to the doctrine incorporated in his text. In Pennsylvania the authority of Hoffman v. Foster, 43 Penn. 137, and Bower v. Hutchinson, 36 Penn. (12 Casey) 285, are to this effect; and in the latter case the following authorities from that State are cited in its support, 7 Watts, 130; 6 Barr, 164; 1 Harris, 222; 6 Harris, 361. The doctrine in Massachusetts is the same as in Pennsylvania, Kellogg v. Barton, 94 Mass. (12 Allen) 527; and also in Alabama, Battle v. Weems, 44 Ala. 105. In New York, as late as 1869, the Court of Appeals has exhaustively considered this question and held to the same effect, expressly overruling 7 Johns. 361, and 7 Wend. 227, the principal American cases holding the reverse upon this question, declaring that this issue was not involved in those cases.

And when we refer to the English precedents it is not certain that the weight of authority upholds the text of Mr. Daniels. See cases of Tenson v. Francis, 1 Camp. 19; Brown v. Davis, 3 T. R. 80; 7 T. R. 429. As against these are cited, Charles v. Marsden, 1 Taunt. 224; Atwood v. Crowdie, 1 Starkie, 483; Stein v. Yglesias, 1 C. M. & R. 565; Sturtevant v. Ford, 43 E. C. L. R. (4 M. & G.) 101; Carruthers v. West, 63 E. C. L. R. (11 Q. B.) 143.

Of these, Stein v. Yglesias, 1 C. M. & R. 565, should be more

properly ranked upon the other side. There the question was as to the sufficiency of pleadings; and the Court said to counsel: "*You do not state that the bill was accepted before it became due. An accommodation acceptor might, to assist his friend, accept such a bill.* There is nothing whatever to lead to a conclusion that the defendants intended to limit the negotiability of the bill to the time before it became due. You had better amend and plead all the facts, to exclude a right in the person accommodated to negotiate the bill after it became due." This language justifies the inference that, had the date of acceptance been properly set out, it would have been sufficient, and the plea held good.

And in the later case of Parr *v.* Jewell, 81 E. C. L R. (16 C. B.) 684, the court casts grave doubts upon the doctrine of Charles *v.* Marsden, 1 Taunt. 224, if it is not almost expressly repudiated. The authorities followed seek to establish an exception unfavorable to accommodation paper, to the rule that paper, after maturity, passes subject to defenses. To justify such an exception its necessity and equity should be clearly established. The general law of transfers is, that the transferee stands in the shoes of the transferror. This rule, however, is set aside, in favor of persons receiving commercial paper, but only when such paper is free from suspicion. The moment it is dishonored by non-payment, it comes from under the exception and passes under the dominion of the general rule. Daniels on Negotiable Instruments, § 724. A person, therefore, taking accommodation paper, although originally invested with the privileges of commerce, after maturity, stands in the same position as though the paper had been originally restricted. He has the rights which the beneficiary had, intrinsically, to confer, and no more.

A person lending his name to another is, under the circumstances, entitled to every safeguard and restriction, expressed or implied, by his agreement. In other words, the paper cannot be used except in the manner contemplated. It is well settled, that a person soliciting such accommodation impliedly

obligates himself, either to personally honor the instrument at maturity, or to put his friend in funds to enable the latter to meet it. Reynolds v. Doyle, 1 M. & G. 735, 39 E. C. L. R. 638; Yates v. Hoppe, 67 E. C. L. R. (9 C. B.) 541. When, therefore, a party applies to another for such assistance, the maturity of the paper is put at such time as the applicant considers sufficient to enable himself to meet or provide for it at maturity. The applicant impliedly declares that his necessities will then be at an end, and the other practically stipulates that his liability shall endure no longer.

If the beneficiary otherwise surmounts the difficulties or meets the exigencies of the moment, and does not use the paper before the expiration of this period, he has no right, without his friends assent, to apply it to other, or subsequent purposes. So, where the maker, or endorser lends his name for a stipulated period, he does not give an unrestricted or unlimited credit, and to hold him bound beyond the period contemplated, is to hold him beyond the terms of his contract. As the holder of paper, after maturity, can recover only when the party passing it to him had the right to do so, and the agreement resulting in the note, or circumstances connected therewith, do not prohibit the transfer, we do not think that Wallace & Cary, in this case, had the right to pass, or plaintiff to receive, the paper sued upon to the detriment of defendant. The fact that the paper is not reclaimed after maturity does not affect the defense; because there is no greater presumption against this defendant than against any other maker of a note, who, paying, or otherwise extinguishing it, neglects to take it into his possession. He had the right, not being himself called upon at maturity to pay the note, to suppose that Wallace & Cary had taken it up and extinguished it with their own funds, and to give himself no further concern about it. In fact, when plaintiff took the note, he had as much right to consider that this had been done as to suppose that Wallace & Cary had never used it, for when endorsers take up paper, it is not proper or usual for banks or other holders to cancel, or mark as paid, the obligation.

Nor should legal responsibility follow upon circumstances tending to create an implied contract or liability, unless the circumstances relied upon afford no other reasonable interpretation or explanation, except that the party sought to be charged intended to bind himself. It is only when the acts set up are such as to lead an innocent person reasonably, if not almost exclusively, to suppose that the party performing them intended to create a liability, that such liability can spring up. Persons are not called upon to so guard and regulate their contract as to avoid every possibility of misconstruction.

Where canceled paper lies still in the hands of others than the party entitled thereto, the fact may be explained upon many hypothesis besides that of intending still to keep it in currency. On the contrary, for motives of convenience, by universal custom, when paper reaches maturity, whether accommodation or other, and the parties desire to continue the relations it evidences, it is always either renewed or extended upon its face. In view of these facts, when paper is past due, and not so renewed or extended, the more reasonable supposition is that this omission was attributable to design, and that the paper was not intended still to run by those who were bound upon it.

Judgment reversed.

Rehearing refused.